
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DAVID MYERS, CHARLENE FLIPPIN,   PLAINTIFFS
THAXTER PITTMAN, SUANE HUFF AND
GAIL HUFF

VS.   CIVIL ACTION NO. 3:05cv481WHB-AGN

CITY OF MCCOMB, MISSISSIPPI   DEFENDANT

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by and through their attorneys, file their complaint for declaratory and injunctive relief and state as follows:

I. Jurisdiction

1. This is a suit in equity under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1983, and the First, Fourteenth and Fifteenth Amendments to the United States Constitution for declaratory and injunctive relief against defendant for its purposeful, intentional and retaliatory implementation of the May 13, 2005 unprecleared Pike County Circuit Court order prohibiting plaintiff Myers' dual service as a state representative and a selectman on the Board of Selectman in McComb, Mississippi.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, §§ 1343(3) and (4), and 2201. This suit is authorized by 42 U.S.C. § 1983 and 42 U.S.C. § 1973c (Section 5 of the Voting Rights Act of 1965). A court of three judges constituted in accordance with the provisions of 28 U.S.C. § 2284 is required by

42 U.S.C. § 1973c for a determination of plaintiffs' Section 5 cause of action involving defendant's failure to obtain Section 5 preclearance from the USAG under § 1973c before implementation and enforcement of the May 13, 2005 -- a clear change of rules candidacy concerning requirements and qualifications. This is an action for declaratory and injunctive relief to prevent deprivation under color of state law, statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to plaintiffs by the Constitution and laws of the United States. The rights, privileges and immunities involved herein include the right to not be subjected to an unprecleared voting qualification or prerequisite to voting, or a standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964, the right not to be subjected to retaliation for exercising free speech under the First Amendment, the right not to be denied equal protection of law secured by the Fourteenth Amendment and the right not to be denied the right to vote and to run for selectmen on account of race under the Fifteenth Amendment of the Constitution of the United States and by 42 U.S.C. §§ 1971(a)(1), 1973, 1973c and 1983.

3. Plaintiffs are African-American adult resident citizens and electors of Ward 3 McComb, Mississippi who wish to support and vote for plaintiff Myers as selectman of ward 3 and seek to protect their right not to be subjected to an unprecleared rules concerning candidacy requirements and qualifications being implemented to prohibit plaintiff Myers' dual service as a state representative

2

and a selectman in ward 3.

4. Defendant is a private charter municipality organized and existing under the laws of the State of Mississippi and is governed by a six (6) member city council elected from single member wards.

## II.   Facts

5. In 1946, defendant abandoned the commission form of government and reverted to its special or private charter, its original governmental form. Quinn v. City of McComb, 212 Miss. 730, 55 So.2d 479, 480 (1951). Defendant's private charter provides for a governing authority of a "Board of Mayor and Selectmen" and defines the respective duties of the mayor and selectmen.

6. On February 13, 1996, exercising the powers granted by the private charter, defendant passed a resolution to provide for a motel/hotel tax (local and private legislation pursuant to Article IV, Section 89 of the Mississippi Constitution of 1890 and to submit a bill to the Mississippi Legislature for that purpose.

7. Pursuant to the February 13, 1996 resolution, plaintiff Myers who serves on the McComb Board of Mayor and Selectmen, and who also serves as a state representative from the 98th House District for Pike and Walthall Counties, Mississippi, filed a bill with the Mississippi House of Representatives to authorize the motel/hotel tax. The bill was adopted by the Mississippi House of Representative as "local and private" legislation in March of 1996, and was delivered to the Senate Finance Committee. Plaintiff Myers then asked the Senate Finance Committee to amend the motel/hotel tax bill to provide for an allocation of 10% of the funds for the

City's Martin Luther King Center and for the City's "Summit Street Area."

8. In April of 1996, plaintiff Myers, in his capacity as an elected selectman called a special meeting for the Board of Mayor and Selectmen to consider the amendment to the bill providing for the 10% allocation. The Board of Mayor and Selectmen voted 4-2 not to support the amendment. Plaintiff Myers voted in favor of the amendment.

9. After the Mayor and Board of Selectmen voted not to support the amendment, the Senate Finance Committee recommended that the bill not pass. Defendant contends that the Senate Finance Committee was influenced by plaintiff Myers in his capacity as a state representative. According to defendant, due to plaintiff Myers' influence in the Mississippi Legislature, the bill has continued to fail passage and has deprived McComb of approximately $100,000.00 per year in tourism related revenue. Plaintiff Myers denies the allegations and claims that he has voted for all tourism bills affecting McComb and Pike County, Mississippi.

10. Due to plaintiff Myers' exercise of free speech, defendant undertook steps to circumvent the alleged influence of plaintiff Myers. On July 9, 2002, in accordance with Miss. Code Ann. § 21-17-9, and after seeking an official opinion from the Mississippi Attorney General, defendant adopted an amendment to its private charter to prohibit any elected official of the City from serving as an elected official who appropriates funds to be received by defendant. Specifically, by the enactment of this

4

charter amendment, defendant seeks to prohibit plaintiff Myers from serving as a member of the McComb Board of Mayor and Selectmen while simultaneously holding the office of state representative.

11. The amendment provides as follows:

AMENDMENT TO MUNICIPAL CHARTER OF THE CITY OF MCCOMB CITY WITH RESPECT TO CONFLICTS OF INTEREST

It is hereby declared essential to the proper operation of democratic government that public officials and employees be independent and impartial; that governmental decisions and policy be made in proper channels of the governmental structure; that public office not be used for private gain other than the remuneration provided by law; that there be public confidence in the integrity of government; and that public officials be assisted in determinations of conflicts of interest.

1. From and after the adoption of this charter amendment it shall be unlawful, and no public servant, employee, or elected official shall:

   a. Perform any service for any compensation during the term of office or employment by which he attempts to influence a decision of the governing authority of the City of McComb City.

   b. Serve as an elected official in any governmental entity which appropriates funds to be received by the City of McComb City, which funds are to be used by or for the government of the City of McComb City in the administration of municipal governmental affairs.

   c. Serve as an elected official in any governmental entity which is empowered to grant or deny any request by the City of McComb City for any relief, funding, or other action relating to the operation of the municipal government of the City of McComb City.

   d. The Charter Amendment shall become effective upon compliance with the requirement of the Mississippi Code

> Section 21-17-9 and receipt of approval of the United States Department of Justice (emphasis added.)

12. Although defendant added subsection (d) to the amendment which states the amendment to the private charter of the City of McComb will not become effective until after the amendment has been approved by the United States Justice Department, the charter amendment has not been submitted to the USAG for preclearance under Section 5 of the Voting Rights Act of 1965, as amended.

13. On August 14, 2002, defendant filed a lawsuit in the Circuit Court of Pike County, against plaintiff Myers seeking to have his dual service status as a state representative and as a member of the Board of Mayor and Selectmen declared unconstitutional under Miss. Constn., Art. 1, §§ 1 & 2 (1890) and the common law doctrine of incompatibility. Miss. Constn. Art. (1890) provides for separation of the powers of government as follows:

Article 1, Section 1.

> The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those who are executive to another.

Article 1, Section 2.

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in

6

either of the other departments.

14. In the circuit court action, on May 13, 2005, defendant obtained a judicial determination that Miss. Constn., Art. 1, §§ 1 and 2 (1890) and the common law doctrine of incompatibility prohibit plaintiff Myers from serving in the Mississippi Legislature which functions in the legislative branch, and simultaneously as a member of the McComb Board of Mayor and Selectmen because it is essentially a part of the executive branch of government. The May 13, 2005 Pike County Circuit Court order reflects the legislative policy choices of McComb, Mississippi, on rules concerning candidacy requirements and qualifications and is different from those in force and effect on November 1, 1964.

15. The May 13, 2005 order of the Pike County Circuit Court prohibiting plaintiff Myers' dual service as a state representative and selectman is a rule concerning candidacy requirements and qualifications and constitutes a practice, procedure or standard with respect to voting within the meaning of Section 5 of the Voting Rights Act of 1965, as amended. A state court order which effectuates a change in voting is ineffective, as a matter of law, until precleared by the United States Attorney General pursuant to Section 5.

16. Defendant is a political subdivision to which the prohibitions of the Voting Rights Act of 1965, 42 U.S.C. § 1973b(a) are in effect pursuant to the certification of the Attorney General of the United States under 42 U.S.C. § 1973b(b).

17. Defendant has the authority and duty to submit pursuant

to 42 U.S.C. § 1973c, § 5 of the Act, "any voting qualification or prerequisite to voting, or standard, practice, or procedure different from that in force or effect on November 1, 1964" to the Attorney General of the United States, or to institute an action in the United States District Court for the District of Columbia for a declaratory judgment that any such qualification or prerequisite to voting, or standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color.

18. The May 13, 2005 order of the Pike County Circuit Court prohibiting plaintiff Myers' dual service as a state representative and a selectman and imposes new rules concerning candidacy requirements and qualifications for selectmen and constitutes a "standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" within the meaning of Section 5.

19. Defendant's implementation of the unprecleared May 13, 2005 Court order prohibiting plaintiff Myers' dual service is in violation of Section 5 and deprives plaintiff Myers' rights secured by Section 5 of the Voting Rights Act of 1965, as amended 42 U.S.C. §§ 1971(a)(1), 1973 and 1973c. The guarantee of Section 5 is that no person shall be denied the right to vote or be subjected to rules concerning candidacy requirements and qualifications that have not been precleared under Section 5.

### III. Violations

    A. First Cause of Action: The Absence of Section 5 Preclearance Under The

Voting Rights Act

21. The allegations of paragraphs 1-20 are readopted and realleged.

22. The May 13, 2005 court order is a new law, barrier, regulation or rule concerning candidacy requirements and qualifications for selectman in McComb. The May 13, 2005 court order embodies new municipal rules relating to candidacy requirements and qualifications as well as prescribing who can run for public office and falls within the ambit of Section 5 of the Voting Rights Act of 1965, as amended under the decisions of Whitley v. Williams, 393 U.S. 544, 564-66 (1968); Hadnott v. Amos, 394 U.S. 358, 366 (1969; Doughtery County Bd. Of Ed. v. White, 439 U.S. 32, 40 (1978); Morse v. Republican Party of Virginia, 517 U.S. 186, 205-06 (1996).

    B. First Cause of Action: Denial of Equal Protection Under The Fourteenth Amendments

23. The allegations of paragraphs 1-23 are readopted and realleged.

24. By virtue of the foregoing, the implementation and enforcement of the May 13, 2005 Pike County Circuit Court order was racially motivated, has a racially discriminatory purpose to prohibit plaintiff Myers' dual service as a state representative and selectman and to deny plaintiffs' and all others similarly situated equal protection of law under the Fourteenth Amendment of the United States Constitution.

25. The May 13, 2005 Pike County Circuit Court order

prohibiting plaintiff Myers' dual service as a state representative and selectman is the creature of McComb's legislative choice and is clear state action within the meaning of the Fourteenth Amendment. McComb's power to determine voter and candidate requirements and qualifications must be exercised in a manner consistent with the equal protection clause of the Fourteenth Amendment. A municipal law which prohibits potential candidates for public office due to concurrent service as a state representative is state action that unlawfully discriminates against plaintiff Myers as a candidates and those voters who wishes to support and vote for plaintiff Myers as an excluded candidate.

    C. Third Cause of Action: Deprivation of Free Speech Under the First Amendment

  26. The allegations of paragraph 1-25 are readopted and realleged.

  27. Defendant's implementation of the unprecleared May 13, 2005 order was in retaliation for plaintiffs' exercise of free speech involving matters of public concern. Plaintiffs' exercise of his right to free speech on matters of public concern was the substantial or motivating factor in defendant's decision to obtain and implement the unprecleared May 13, 2005 order prohibiting plaintiff Myers' dual service as a state representative and as a selectman.

  28. Plaintiffs constitutional right to free speech involving matters of public concern was clearly established on May 13, 2005 at the time defendant implemented the Court order to prohibit his

dual service as a state representative and selectman. No reasonable public official could have assumed that they could retaliate against a public employee who engaged in free speech involving matters of public concern.

> VII. Fourth Cause of Action: Denial Of The Right to Vote And to Run for Public Office Under the Fifteenth Amendment

29. The allegations of paragraph 1-28 are realleged and readopted herein.

30. The May 13, 2005 Pike County Circuit Court order affects plaintiff Myers as a candidate, has a correlative effect on the remaining plaintiffs as ward 3 voters, is an unconstitutional limitation and burden on plaintiffs' exercise of voting rights and is subject to stringent standards of judicial review. The order creates barriers to candidate access, tends to limit the field of candidates from which ward 3 voters might choose and deny ward 3 voters the opportunity to vote for the candidate of their choice under the Fifteenth Amendment. Upon implementation of the May 13, 2005 order, plaintiffs' right to vote must be cast for other candidates at a time when their candidate plaintiff Myers seeks a place on the ballot. The May 13, 2005 order denied plaintiffs' right to vote on account of race under the Fifteenth Amendment.

> VIII. Fifth Cause of Action: Intentional Infliction of Emotional Distress

31. Defendant's actions and conduct were committed with such grossness and recklessness as to evidence a complete and utter indifference by defendant as to the consequences of its actions.

32. Plaintiffs, as a direct, proximate result of defendant's

11

intentional acts were made to suffer mental, physical and emotional distress and anguish.

33. Defendant's implementation of the May 13, 2005 Pike County Circuit Court order is arbitrary and capricious, is unsupported by substantive evidence, is clearly erroneous in fact and in law and is contrary to the overwhelming weight of the evidence.

34. Defendant's conduct was the moving force behind the violations of the plaintiffs' constitutional rights and defendant is liable.

35. By virtue of the foregoing, defendant's actions deprived plaintiffs of vested voting rights under Section 5 and has caused and is presently causing immediate and irreparable injury to plaintiffs. Unless restrained and enjoined by this court, defendant will continue to deny plaintiffs' Section 5 right not to be subjected to unprecleared rules concerning candidate requirements and qualifications.

36. There is a real and actual controversy between the parties. Plaintiffs have no adequate remedy at law other than this action for declaratory and injunctive relief. Plaintiffs are suffering irreparable injury as a result of defendant's unlawful actions and conduct complained of herein and that injury will continue unless enjoined by this Court.

37. Defendant's actions and conduct described above constitute a policy and custom were implemented under color of law of the State of Mississippi, the City of McComb and under color of

the defendant's officers and agents.

WHEREFORE, plaintiffs respectfully pray that:

(a) this Court take jurisdiction of this cause;

(b) this Court cause to be convened a district court of three judges to hear plaintiffs' Section 5 cause of action for the absence of Section 5 preclearance from the United States Attorney General as required by 28 U.S.C. §§ 2284 and 42 U.S.C. § 1973c;

(c) the court of three judges declare the May 13, 2005 order of Pike County Circuit Court prohibiting plaintiffs' dual service as a state representative and selectman constitutes a rule concerning candidacy requirements and qualifications which must be precleared under Section 5 before being enforced;

(d) enjoin the defendant from declaring a vacancy for plaintiff Myers' selectman seat;

(e) issue a declaratory judgment that defendant's implementation of the May 13, 2005 Court order to prohibit plaintiff Myers' dual service as a state representative and as a selectman are violative of plaintiffs' rights secured by Section 5 of the Voting Rights Act of 1965, the First, Fourteenth and Fifteenth Amendments of the Constitution of the United States and 42 U.S.C. §§ 1971(a)(1), 1973 and 1973(c);

(f) this Court grant plaintiffs' their costs and reasonable attorneys' fees, and issue such further relief as may be just and proper; and

(g) award plaintiffs $500,000 in compensatory and punitive damages for defendant's wilful, intentional and deliberate

violation of their rights.

SO COMPLAINED, this the _____ day of August, 2005.

Respectfully Submitted,

DAVID MYERS, ET AL., Plaintiffs

BY: *Ellis Turnage*

BY: *Willie J. Perkins*
WILLIE JAMES PERKINS, SR.
MSB # 4122
ATTORNEY AT LAW
Post Office Box 8404
Greenwood, Mississippi 38935
Tel: (662) 455-1211
Fax: (662) 453-9159
Attorney for Plaintiffs

BY: *Ellis Turnage*
ELLIS TURNAGE, MSB #8131
TURNAGE LAW OFFICE
108 North Pearman Avenue
Post Office Box 216
Cleveland, Mississippi 38732
Tel: (662) 843-2811
Fax: (662) 843-6133
Attorney for Plaintiffs