

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

No: 3:05-CV-00481

DAVID W. MYERS, CHARLENE FLIPPIN, THAXTER PITTMAN,
SUANE HUFF, and GAIL HUFF,

Plaintiffs,

versus

CITY OF MCCOMB, MISSISSIPPI,

Defendant.

Before BARKSDALE, Circuit Judge, and BARBOUR and LEE, District Judges.

PER CURIAM:

Pursuant to the Voting Rights Act (VRA), 42 U.S.C. § 1973, David W. Myers claims: before McComb may enforce a Mississippi state court ruling barring him from his dual offices as a state representative and as a Selectman on McComb's Board of Selectmen, VRA § 5, 42 U.S.C. § 1973c, requires either administrative preclearance of the order with the United States Attorney General or its being upheld in the United States District Court for the District of Columbia (jointly, § 5 compliance). Concomitantly, he seeks to have the state court ruling enjoined pending § 5 compliance.

At issue is whether: (1) the Anti-Injunction Act (AIA), 28 U.S.C. § 2283, bars the injunctive relief; and (2) the state court ruling effectuated a change in Mississippi law, requiring § 5 compliance.  The AIA does not bar such relief; the ruling created a new candidate eligibility requirement.  Accordingly, pending § 5 compliance: (1) that ruling, including McComb's enforcement of it, is enjoined; and (2) McComb is ordered to reinstate Myers on the Board.  This relief does *not* enjoin the appeal pending in the Mississippi Supreme Court.

I.

Myers is a member of the Board and a member of the Mississippi House of Representatives.  As a result of his dispute with other Board members, McComb *conditionally* amended its private charter on 9 July 2002 to prevent from serving on the Board a public official of any governmental entity that either "appropriates funds ... to McComb" or has the power "to grant or deny any request by ... McComb ... for any action relating to the operation of [its] municipal government".  Amendment to Municipal Charter of the City of McComb, With Respect to Conflicts of Interest, § 1(b) & (c) (9 July 2002).  The amendment is conditional because it provides that, to become effective, § 5 compliance is required. *Id*. § 2.  Despite this provision, such compliance has *not* been initiated.

One issue concerning the conditional amendment is whether the separation of powers doctrine in the Mississippi Constitution

2

prevents holding dual offices. The issue has been in dispute for over a decade. In 1992, an advisory opinion by the Mississippi Attorney General stated simultaneous service as a city councilman (for a municipality other than McComb) and state senator was *not* a violation of that doctrine. 1992 WL 614295 (Miss. A.G.). Next, in 1994, the Mississippi Legislature attempted to enact a law *prohibiting dual service* in a municipality's government and the state legislature. H.B. 815, 1994 Leg., Reg. Sess. (Miss. 1994). Section 5 preclearance was denied by the United States Attorney General, however, based on finding the proposed "change was adopted for racial[ly] discriminatory reasons, and that black voters [would] be adversely affected by this change". Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division, to Sandra Murphy Sheldon, Esq., Mississippi Special Assistant Attorney General (6 Feb. 1995) (on file with the United States Department of Justice, Civil Rights Division).

Finally, in 2002, taking a 180-degree turn, the Mississippi Legislature passed a law *prohibiting municipalities* from "impos[ing] any additional requirements on holding any municipal elective office or receiving compensation for any elective office". MISS. CODE ANN. § 21-15-2 (2002). On 22 July 2002, the United States Attorney General interposed no VRA § 5 objection to this law. *See* § 21-15-2 note (2002) (Letter from United States Attorney General).

As noted, approximately two weeks earlier, McComb enacted its conditional amendment to its charter, proscribing dual offices in certain instances. Moreover, only eight days before preclearance was obtained for § 21-15-2, McComb filed an action against Myers in the circuit court for Pike County, Mississippi, seeking a declaration that: (1) subject to § 5 compliance, McComb's charter amendment is a valid exercise of municipal authority that violates no state or federal law; (2) Myers was holding both a legislative (Mississippi House of Representatives) and executive (Board) position, in violation of the separation of powers doctrine, set forth in Article 1, §§ 1 and 2 of the Mississippi Constitution; and (3) those dual positions also violated the common-law doctrine of incompatible offices. *City of McComb v. Myers,* No. 2002-124 (Pike County, Miss. Cir. Ct.).

Myers removed the action to federal court, pursuant to 28 U.S.C. § 1331 and VRA § 5. The district court granted Myers' summary judgment motion, holding his dual positions conflicted with neither the Mississippi Constitution nor the incompatible-offices doctrine. *City of McComb v. Myers,* No. 3:02-cv-1397WS (S.D. Miss. 30 Sept. 2003).

McComb appealed to the Fifth Circuit, which held federal court jurisdiction was lacking because the removal from state court had been pursuant to an impermissible anticipatory federal law defense: the VRA. Therefore, the action was remanded to district court for

4

remand to state court. (Of course, in so holding, the Fifth Circuit did *not* reach the merits of the VRA claim.) ***City of McComb v. Myers***, 122 F. App'x 698 (5th Cir. 2004).

On remand, the state court held on 9 May 2005 that the separation of powers doctrine in the Mississippi Constitution, as well as that of incompatible offices, prohibits Myers from serving simultaneously in the Mississippi House of Representatives, which functions in the legislative branch, and as a member of the Board, because it is part of the executive branch.   The VRA is *not* mentioned in that ruling.

Pursuant to that ruling, Myers' Board seat was vacated. Thereafter, the state court denied his motion for reconsideration. ***City of McComb v. Myers,*** No. 2002-124 (Pike County, Miss. Cir. Ct. 3 June 2005).   Subsequently, the Mississippi Supreme Court denied his motion for stay pending appeal. ***Myers v. City of McComb***, No. 2005-TS-01266 (Miss. 21 July 2005).

                                    II.

Myers filed this action in August 2005, seeking, *inter alia*, injunctive relief pending § 5 compliance.  He maintains this court has jurisdiction to provide such relief pursuant to VRA § 5. McComb counters that the AIA bars it.

Concomitantly, Myers claims the state court order effectuated a change in eligibility requirements that necessitates § 5 compliance.    McComb responds that the state court merely

5

interpreted a constitutional provision in effect long before the VRA became effective and, therefore, the ruling is not subject to § 5.

### A.

Although there does not appear to be any direct precedent, it goes without saying that the AIA does *not* prohibit federal courts from enjoining state court proceedings. *See, e.g.*, **Branch v. Smith**, 538 U.S. 254, 265 (2003) (holding VRA three-judge court properly enjoined state court redistricting plan because it had failed to satisfy § 5 compliance); **Gresham v. Harris**, 695 F. Supp. 1179 (N.D. Ga. 1988), *aff'd*, **Poole v. Gresham**, 495 U.S. 954 (1990) (holding federal court properly enjoined enforcement of state court order that did not comply with § 5).

In any event, the AIA states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments". 28 U.S.C. 2283. Accordingly, the AIA contains three exceptions: (1) where Congress authorizes such an injunction in a statute; (2) to aid in federal courts' jurisdiction; and (3) to protect a federal court judgment. *Id*.

Nevertheless, the Supreme Court has recognized other exceptions so that the import and purpose of other Acts of Congress could be given their intended scope. **Mitchum v. Foster**, 407 U.S.

6

225 (1972) (holding AIA "express authorization" exception applied to actions arising under § 1983). For example, under an earlier version of the AIA, *French v. Hay*, 89 U.S. 250 (1875), and *Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922), permitted federal courts to enjoin state courts to enforce federal criminal and civil removal provisions, while *Ex Parte Royall*, 117 U.S. 241 (1886), recognized federal courts' ability, in habeas cases, to enjoin any proceeding in which a state habeas petitioner was involved.

In 1972, *Mitchum* held § 1983 permits federal courts to enjoin state court proceedings, although § 1983 does not expressly authorize that relief. *Mitchum*, 407 U.S. at 237. According to *Mitchum*, this omission was not dispositive:

> The legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts.... The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights.

*Id*. at 242.  Other courts have followed the reasoning in *Mitchum*, recognizing federal courts may issue an injunction, notwithstanding the AIA, where failure to do so would undermine the purpose of the statute in question. *See, e.g., In Re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795 (8th Cir. 2001) (Private Securities Litigation

7

Reform Act), *cert. denied,* **Desmond v. BankAmerica Corp.**, 535 U.S. 970 (2002); **Studebaker Corp. v. Gittlin**, 360 F.2d 692 (2d Cir. 1966) (Securities and Exchange Act); **Dilworth v. Riner**, 343 F.2d 226 (5th Cir. 1965) (1964 Civil Rights Act); **Okin v. SEC**, 161 F.2d 978 (2d Cir. 1947) (Public Utility Holding Act); **Walling v. Black Diamond Coal Mining Co.**, 59 F. Supp. 348 (W.D. Ky. 1943) (Fair Labor Standards Act).

Along this line, the VRA states, in pertinent part:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color....
(b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

42 U.S.C. § 1973. Where there is a change in voting practices, standards, procedures or political processes involving voting, § 5 compliance is required. **Id.** at § 1973c. The proponent of the change must show it "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color". **Id.**

8

Like § 1983, VRA § 5 created a federal forum to challenge potentially discriminatory changes in state election procedures. It was enacted to prevent covered jurisdictions "from staying one step ahead of the federal courts by passing new discriminatory election laws as soon as the old ones had been struck down". *Beer v. United States*, 425 U.S. 130, 140 (1976) (internal quotation omitted).

As discussed, although § 5 does not explicitly vest federal courts with the power to enjoin state court proceedings, "in order to qualify under the 'expressly authorized' exception of the [AIA], a federal law need not contain an express reference to that statute". *Mitchum,* 407 U.S. at 237. Additionally, a federal statute "need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception". *Id*. Instead, "to qualify as an 'expressly authorized' exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding". *Id*. Obviously, VRA § 5 fits soundly within the *Mitchum* framework.

Section 5 compliance is precisely the type of "specific and uniquely federal ... remedy" contemplated by *Mitchum*. *Id.* at 237. Indeed, such compliance is a procedure for preserving the status quo until a proposed change is considered in the light of the VRA. *McCain v. Lybrand*, 465 U.S. 236 (1984). Section 5, like § 1983,

9

serves to "alter[] the relationship between the States and the Nation with respect to the protection of federally created rights" by "interpos[ing] the federal courts [,as well as the United States Attorney General,] between the States and the people, as guardians" of minority voting rights. *Mitchum,* 407 U.S. at 242.

Concerning the friction caused by federal injunctive relief, the parties dispute whether the VRA is at issue in the state court proceeding, now pending in the Mississippi Supreme Court. In his answer, Myers raised the VRA as a defense.  As noted, the VRA is *not* mentioned, however, in the state court ruling. In any event, McComb maintains that the Mississippi Supreme Court may address the VRA claim. Myers counters that it is procedurally barred. We need not decide this question. Although state courts have concurrent jurisdiction to determine whether there has been § 5 compliance, *see* ***Hathorn v. Lovorn***, 457 U.S. 255, 266 (1982) (holding Mississippi Supreme Court has concurrent jurisdiction to determine whether there had been § 5 compliance), this does *not* preclude our rendering a decision.  In this regard, only the state court order, as well as McComb's enforcement of it, are enjoined pending § 5 compliance. Accordingly, the appeal pending in the Mississippi Supreme Court is *not* enjoined.  Of course, should that court affirm the state court order, that order, and McComb's enforcement of it, remain enjoined pending § 5 compliance.

Finally, we note that McComb relies exclusively on the AIA as a jurisdictional bar. Because McComb fails to raise prudential reasons we should not act (abstention doctrines), we decline to raise them *sua sponte*. *See* ***Swisher v. Brady***, 438 U.S. 204, 213 n.11 (1978) (stating because the parties had not raised ***Younger*** abstention, the Court was "not inclined to examine the application of the doctrine *sua sponte*"); *see also* ***Morales v. Trans World Airlines, Inc.***, 504 U.S. 374, 381 n.1 (1992) (holding because the petitioner had not argued for abstention, "the federal-state comity considerations underlying [abstention] are accordingly not implicated") ; ***Time Warner Cable v. Doyle***, 66 F.3d 867 (7th Cir. 1995) (holding ***Younger*** abstention was inapplicable where party against whom an injunction had been sought had not raised it), *cert. denied*, 516 U.S. 1141 (1996).

B.

Myers claims: the state court's proscribing his membership in both the legislature and the Board created a change in eligibility requirements for Board candidates; therefore, § 5 compliance is required. McComb responds that the state court order is not subject to the VRA because it made no change in existing candidate requirements; instead, it simply stated a constitutional rule in existence more than 70 years prior to the VRA.

As discussed *supra*, § 5 compliance is required for (1) *any* change to laws that (2) affects voting. 42 U.S.C. § 1973c. For the

11

following reasons, the state court order is both a change in Mississippi law, and one that affects voting procedures.

1.

The state court order created a change in the application of the separation of powers doctrine found in §§ 1 and 2 of the Mississippi Constitution. Section 1 provides:

> The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those who are executive to another.

Section 2 provides:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

MISS. CONST., ART. 1 (1890).

These sections were enacted in 1890; but, until the state court order, no court had interpreted them to prevent simultaneously holding offices in a municipality's governing body and the legislature. According to McComb, however, the state court order merely restated a constitutional provision in existence since 1890 and therefore is not a post-VRA change in the law triggering § 5.

For support, McComb relies on **_Stringer v. Lucas,_** 812 F. Supp. 676 (N.D. Miss. 1993). In **_Stringer_**, the plaintiff was elected to

12

serve on the county election commission and later was elected mayor of a city within that county. He was disqualified, however, from becoming mayor, pursuant to a Mississippi statute that made it illegal for any individual to be elected to any office within a county where he was also its election commissioner, unless he had resigned from that position the prior calendar year. Stringer filed suit, and lost both at trial and on appeal to the Mississippi Supreme Court. Thereafter, he filed suit in federal court, claiming the state court ruling was invalid because it was a change in the law without § 5 compliance. The three-judge court disagreed, holding the Mississippi Supreme Court decision was a simple affirmation of a long standing statutory rule. Because § 5 compliance had been obtained for that statute, and because the Mississippi Supreme Court had ruled previously on an identical challenge, the challenged judicial affirmation of the statute did *not* change the law. *Id.*

It goes without saying that McComb's reliance on ***Stringer*** is misplaced. In the action at hand, there has been no judicial restatement of an interpretation of a constitutional provision for which § 5 compliance has been satisfied. Instead, the state court rendered a new interpretation of Mississippi constitutional law. This is reflected in the above-discussed Mississippi Attorney General advisory opinion in 1992, stating that dual service as a city councilman and state senator is *not* a violation of the state

13

constitution's separation of powers doctrine. 1992 WL 614295 (Miss. A.G.). Of course, that opinion is not binding on this court; it indicates, however, that dual membership in a municipality's governing body and the state legislature was *not* prohibited prior to the state court order at issue.

Additionally, as also discussed *supra*, in a turnabout from its 1994 bill that did not satisfy § 5 compliance, the Mississippi legislature passed a law in 2002 prohibiting municipalities from creating new eligibility requirements for candidates seeking elected office. MISS. CODE ANN. § 22-15-2 (2002). That statute was precleared with the United States Attorney General. Only eight days earlier, McComb apparently abandoned its then quite recent attempt to amend its charter to prohibit dual service; instead, it filed an action against Myers in state court under, *inter alia*, the state's separation of powers doctrine. Instead of pursuing the § 5 compliance called for by the putative amendment, McComb attempted an end run around the VRA with its state court action.

In its brief, McComb even concedes that its action presented an issue of first impression for the state court. Although the state court decision may have been based on language written in 1890, in practice, it was a new application of a constitutional rule. Therefore, the decision effectuated a change in Mississippi law as it existed when the VRA became effective in 1964.

14

2.

Because the state court order created a change in Mississippi law, next at issue is whether that change affected voting standards, practices, or procedures, triggering VRA § 5. It does.

The United States Department of Justice has implemented regulations for VRA § 5, detailing what constitutes a change in voting procedures. These regulations provide that a change affecting voting includes "[a]ny change affecting the eligibility of persons to become or remain candidates, to obtain a position on the ballot in primary or general elections, *or to become or remain holders of elective offices*". 28 C.F.R. 51.13(g) (emphasis added). "Regulations promulgated by the Department of Justice interpreting [a statute it enforces] are, of course, entitled to considerable weight." *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996). *See Caudell v. City of Toccoa*, 153 F. Supp. 2d 1371, 1377 (N.D. Ga. 2001) (quoting Department of Justice VRA regulations); *see also Marcus v. Kan. Dep't of Revenue,* 170 F.3d 1305, 1307 (10th Cir. 1999); *Helen L. v. DiDario*, 46 F.3d 325, 331-32 (3d Cir.), *cert. denied, Pa. Sec'y of Pub. Welfare v. Idell S.*, 516 U.S. 813 (1995); *Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986); *Noland v. Wheatley*, 835 F. Supp. 476, 483 (N.D. Ind. 1993).

Section 5 has a wide reach. Any change affecting the eligibility of an individual to become a candidate requires § 5

compliance. *See, e.g.*, ***Foreman v. Dallas County***, 521 U.S. 979, 980 (1997) (holding a change in procedure to select judges who monitor polling sites based on party affiliation, although merely administrative in nature and discretionary pursuant to the state statute, required § 5 compliance); ***Morse v. Republican Party***, 517 U.S. 186, 205 (1996) (holding a newly enacted filing fee to be paid by applicants seeking to become state party delegates required § 5 compliance); ***Dougherty County Bd. of Educ. v. White***, 439 U.S. 32, 41 (1978) (holding county board of education rule, which required employees to take unpaid leaves of absence while campaigning for elective political office, required § 5 compliance because it was a "standard, practice or procedure with respect to voting"); ***Hadnott v. Amos***, 394 U.S. 358, 366 (1969) (holding an Alabama statute requiring independent candidates to declare their intention to seek office two months earlier than under prior procedures imposed "increased barriers" on candidates and required § 5 compliance).

McComb maintains the state court ruling does not create a change in voting procedures because it did not involve a change that affected candidacy requirements or voting laws. According to McComb, the order simply affected the Board's internal workings. For support, McComb cites ***Presley v. Etowah County Comm'n***, 502 U.S. 491 (1992).

16

*Presley* held a change to the substantive powers of the county commissioner to spend budget monies did not require § 5 compliance because this change involved the "internal operations" of an elected body. *Id.* at 503. *Presley* provides that such a change has no impact on voting. *Id.*

*Presley* does not apply to this action. The state court order does not merely relate to the Board's internal workings.  Nor does the order simply change the substantive powers of its members. *See id.* at 504-05. Instead, this new requirement alters the eligibility qualifications for becoming — or, in this instance, remaining — a member of that entity. After the state court decision, state legislators can no longer pursue office for McComb's Board, and vice versa. As McComb conceded at oral argument to this court on 31 October 2005, the state court order created a *new* "disqualification" for eligibility for the Board. Such a change requires § 5 compliance.

*Caudell* held a similar change triggered § 5. 153 F. Supp. 2d at 1371. In *Caudell*, a city commissioner, who was also a member of a hospital board, contested enforcement of a state statute amending a city's charter to prohibit any person from serving simultaneously on the city commission and a hospital board. The court held the act fell "squarely within § [5], for it is certainly a change affecting the eligibility of plaintiff and others to become *or remain*

17

candidates for election to the City Commission". *Id*. at 1377 (emphasis added). Because the Georgia legislature failed to comply with § 5, the act was unenforceable. *Id*.

### III.

For the foregoing reasons, the 9 May 2005 state court order, including McComb's enforcement of it, is enjoined, pending compliance with VRA § 5.

*INJUNCTION GRANTED*